**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

Douglas Gurlea, Thomas Brunt IV, and
Shane Brunt
                          Plaintiffs                    3:22-cv-24

v.

George H.T. Dudley and
Dudley Newman Feuerzeig LLP              **JURY TRIAL DEMANDED**
                          Defendants
_____/

## Verified Complaint

Plaintiffs Douglas Gurlea, Thomas Brunt IV and Shane Brunt (collectively the "Plaintiffs") by their attorneys, the law office of Michael L. Sheesley, P.C. as and for their complaint against George H.T. Dudley and Dudley Newman Feuerzeig LLP, (collectively, the "Defendants") set forth the following:

## I.    PARTIES

1.  Plaintiffs, Douglas Gurlea, Thomas Brunt IV, and Shane Brunt are individual former owners of Heavy Materials, LLC ("Heavy Materials") a concrete company which was headquartered at 7865 Estate Mariendahl, St Thomas, VI, 00802.  The membership interests of Heavy Materials were sold to U.S. Concrete on October 6, 2015.

2.  Douglas Gurlea is a U.S. Citizen and current resident of the state of Colorado.

3.  Thomas Brunt IV and Shane Brunt are U.S. Citizens and residents of the U.S. Virgin Islands.

4.  Upon information and belief, at all relevant times, defendant George H.T. Dudley was and is a U.S. Citizen and resident of the U.S. Virgin Islands. He is a partner and founding member

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

of the law firm of Dudley Newman Feuerzeig LLP[1] ("DNF LLP"), with a principal place of business at 1000 Frederiksberg Gade, St. Thomas, VI 00802. Prior to the current formation of DNF LLP, Dudley was a partner of DNF LLP's predecessor, Dudley, Topper and Feuerzeig, LLP ("DTF"), where he practiced law for several decades.

5.   Upon information and belief, defendant DNF LLP is a law firm in the U.S. Virgin Islands with offices on both St. Thomas and St. Croix, with a principal place of business of 1000 Frederiksberg Gade, St. Thomas, VI 00802.

6.   The defendant law firm, DNF LLP, was established by a merger in 2019 of two law firms in the U.S. Virgin Islands, Dudley, Topper and Feuerzeig, LLP, based on St. Thomas, and Nichols Newman Logan Grey & Lockwood, PC, based on St. Croix.

7.   At all relevant times discussed in this complaint, the Plaintiffs were represented by the firm under its previous name, Dudley, Topper and Feuerzeig, LLP, in St. Thomas.

8.   In addition to being their lawyer for more than a decade, George Dudley was a trusted family friend to one or more of the Plaintiffs. As discussed below, this exacerbated the damages proximately caused to the Plaintiffs.

## II.   JURISDICTION AND VENUE

9.   This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. 1331 because the causes of action arise under the laws of the United States generally referred to as The Sherman Antitrust Act, The Clayton Act, and the Federal Trade Commission Act.  The federal antitrust issues at the heart of Plaintiffs' case are disputed, substantial

---

[1] As set forth in this complaint, Dudley Newman and Feuerzeig LLP ("DNF") is the successor in interest to Dudley, Topper and Feuerzeig LLP ("DTF").  DNF and DTF may be used interchangeably in the complaint, the intent is always to refer to the law firm which George H.T. Dudley, Esq. was a partner with at the relevant time periods.

Case: 3:22-cv-00024-RAM-RM    Document #: 1    Filed: 04/09/22    Page 3 of 41
Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

and can be considered by a federal forum "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).

10. Upon information and belief, each of the Defendants regularly conducts business within the jurisdiction, and each played a central and material role in the misconduct discussed below and the damages suffered by Plaintiffs as a result.

11. Venue is proper in the district of St. Thomas and St. John, pursuant to 28 U.S.C. 1391, in that the defendant George Dudley resides in the St. Thomas and St. John district, and a substantial part of the acts and omissions occurred in the district of St. Thomas and St. John.

12. Supplemental jurisdiction for Territorial law claims exists pursuant to 28 U.S.C. 1367.

## III.    FACTUAL BACKGROUND

13. George Dudley had been the attorney for Heavy Materials and the plaintiffs Thomas Brunt, Shane Brunt and Doug Gurlea for over a decade.

14. George Dudley is an experienced attorney, who holds himself out as a distinguished lawyer, in multiple fields of law, but not in antitrust law:

George H.T. Dudley is a founding member of Dudley Newman Feuerzeig LLP and served as Managing Partner of the predecessor firm, Dudley, Topper and Feuerzeig, LLP, from 1978 until 2003. His experience is in the fields of Banking and Finance, Corporate Law, Real Property Law and Employment Law (for Management.)

During his career, Mr. Dudley has distinguished himself among his peers and within the legal community. He is an elected Life Member of the American Law Institute and serves as an Emeritus Member of its Council. He served as an Adviser on the Restatement of the Law, Third, Property (Mortgages) for the American Law Institute. Mr. Dudley also is an elected Fellow of the American College of Real Estate Lawyers and a Fellow of the American Bar Foundation.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

In the U.S. Virgin Islands and elsewhere in the Caribbean, he has had the opportunity to represent a broad spectrum of corporations and individuals in complex banking, corporate and real estate matters.

15. As their attorney, Defendants represented them and rendered legal advice as to a number of business and personal matters.

16. George Dudley and DNF's representation of the Plaintiffs began in 2005 as the plaintiffs, in their individual capacities, began to consider the purchase of a concrete business located in St. Thomas, VI.

17. The Defendants represented the Plaintiffs in the purchase of the concrete business and the formation of the entity Heavy Materials, LLC which eventually became the 'purchaser' and operator of the concrete business.

18. After the formation of Heavy Materials, the Defendants immediately began representing Heavy Materials as general counsel for that entity and the associated concrete business.

19. Heavy Materials, since its formation and inception, was always a 'closely held entity' and the only members were Douglas Gurlea, Thomas Brunt IV, and Shane Brunt.

20. Heavy Materials was founded by the Plaintiffs in 2005 and sold by the Plaintiffs to U.S. Concrete in 2015. During its operation in the Virgin Islands during the decade from 2005 to 2015, George Dudley and other attorneys at Dudley Newman Feuerzeig provided legal advice to both Heavy Materials as a company, as well as to the plaintiffs as individuals.

21. By way of example only, Defendants represented Thomas Brunt IV and Shane Brunt in advice related to estate planning during the time period from 2008 – 2015.

22. By further way of example, the Defendants represented Thomas Brunt IV, Shane Brunt, and Douglas Gurlea in their purchase of a barge (M/V Sydney Marine) and the associated formation of an entity to hold title to the vessel.  This business was a separate legal entity

from Heavy Materials. When the business did not work out, the individual plaintiffs engaged in a 'short sale' of the vessel. Subsequent to the short sale, the defendants represented each individual plaintiff in negotiations and settlement with the financing institution/bank where each individual Plaintiff had signed a personal guaranty and still each owed hundreds of thousands of dollars.

23. The representation by the Defendants also included the purchase of another concrete business, St. Thomas Concrete, by the Plaintiffs/Heavy Materials in the time period 2006 – 2007.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

24. George Dudley, and Dudley Newman Feuerzeig LLP represented the Plaintiffs in their

individual capacities (as well as Heavy Materials, LLC) in the sale of the membership

interests of Heavy Materials, LLC to U.S. Concrete, Inc. in October 2015.

**Section 10.02 Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the fifth (5th) day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective Parties at the following addresses (or at such other address for a Party as shall be specified in a notice given in accordance with this Section 10.02):

| If to the Company prior to the Closing: | Heavy Materials, LLC<br>7865 Estate Mariendahl<br>St. Thomas, VI 00802<br>Facsimile: (340) 775-2926<br>E-mail: d.gurlea@heavymaterialsvi.com<br>s.brunt@heavymaterialsvi.com |
|---|---|
| with copies to (which shall not constitute notice): | Dudley, Topper and Feuerzeig, LLP<br>P.O. Box 756<br>St. Thomas, VI 00804<br>Attention: George H.T. Dudley<br>Facsimile: (340) 715-4400<br>E-mail: gdudley@dtflaw.com |
| If to any Seller: | Douglas J. Gurlea<br>P.O. Box 4194<br>Breckenridge, CO  80424<br>Email: dgurlea@gmail.com |
| | Thomas B. Brunt, IV<br>3814 Crown Bay #8<br>St. Thomas, VI  00802<br>Email: tbb4@msivi.com |
| | Shane G. Brunt<br><br>3814 Crown Bay #8<br>St. Thomas, VI  00802<br>Email: shane@msivi.com |
| with copies to (which shall not constitute notice): | Dudley, Topper and Feuerzeig, LLP<br>P.O. Box 756<br>St. Thomas, VI 00804<br>Attention: George H.T. Dudley<br>Facsimile: (340) 715-4400<br>E-mail: gdudley@dtflaw.com |

*Notice Section of Membership Purchase Agreement between Heavy Materials, LLC and U.S. Concrete showing representation by George Dudley and Dudley, Topper and Feuerzeig, LLP*

25. The individual Plaintiffs were the 'sellers' of the membership interests of Heavy Materials,

LLC to U.S. Concrete, and were represented by the Defendants.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

### A.  Operation of the concrete business

26. As the Virgin Islands experienced severe economic challenges in the aftermath of the 2007-2008 financial crisis, construction waned and along with it, the demand for concrete. Heavy Materials was in contact with a concrete company called Spartan, based in St. Croix.

27. Initially, Heavy Materials sought to sell aggregates (raw materials for concrete) to Spartan, as Heavy Materials was always willing to do with other companies in the concrete business, even if they might be competitors. However, it became apparent that Spartan, which was being operated by Rodger Bressi and funded by New York hedge fund founder Warren Mosler, was engaging in predatory pricing for the purpose of harming Heavy Materials' business in order to bankrupt it or buy it.

28. Spartan Concrete was represented by Hunter Logan of Nichols Newman Logan Grey & Lockwood, PC.

29. George Dudley and Hunter Logan are presently partners in the same law firm – Dudley Newman Feuerzeig LLP.

30. The plaintiffs, in their complex interactions with Spartan, continually sought and received legal advice from George Dudley and other attorneys at his firm. As discussed in detail herein, over several months from late 2012 through 2013, defendants advised the plaintiffs on two agreements that Heavy Materials entered into with Spartan in December of 2013.

31. In the first agreement, signed December 13th, 2013, Spartan assigned to Heavy Materials the lease on its industrial property in St. Thomas (the "St. Thomas Lease Assignment") which was real estate leased from Sookram and/or No. 1 located in the industrial area of St. Thomas commonly known as 'Brookman Road'.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

32. In the second agreement, effective two days later - on December 15th, 2013 - (the "Supply Agreement") Heavy Materials agreed to sell Spartan aggregates at a ten percent discount, and Spartan agreed to purchase aggregates solely from Heavy Materials.  Section 7 of the Supply Agreement, entitled "Restrictions" had a clause stating that Heavy Materials would not sell ready-mix concrete on St. Croix. The Supply Agreement also had an option for Heavy Materials to buy Spartan.

33. Significantly, during the process of developing, negotiating and executing these agreements, George Dudley – explicitly and repeatedly – ***advised the plaintiffs that these agreements did not violate antitrust law***, despite the fact that Dudley was not an expert in antitrust law, did not purport to practice antitrust law, and, upon information and belief,  did not adequately research antitrust law or consult antitrust experts.

34. It later became clear that the agreements between Heavy Materials and Spartan presented significant local and federal antitrust issues, which has proximately caused Plaintiffs catastrophic harm including, without limitation, substantial legal fees, uncertainty about their future, and irreparable harm to their reputations and relationships.

35. In 2014, the Virgin Islands Economic Development Authority wrote a letter to Plaintiff Douglas Gurlea noting its "great concern" that Spartan and Heavy materials simultaneously ceased certain business activities in their "opposite districts," St. Thomas and St. Croix.  This letter alleged the "creation of monopolistic environments", "complaints about collusion", and violations of "antitrust laws".

36. Defendants provided this legal advice to the plaintiffs in writing, by telephone calls, in person. In a letter response, Dudley wrote on DTF letterhead, to the Virgin Islands Economic Development Authority in 2014.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

37. Defendants provided incorrect advice to Plaintiffs as to federal antitrust and other matters, and responded incorrectly as to antitrust and other issues in this letter.

38. Defendants had multiple opportunities to correct his mistakes in his advice to the Plaintiffs – or even to simply speak to an antitrust expert – and at each point, he declined to do so.

39. In 2015, Spartan decided to file a lawsuit against Argos USVI, a company supplying bulk cement. In 2017, there was a bench trial in the 'Argos litigation', revealing the existence of the two agreements between Heavy Materials and Spartan. Following the revelation of these agreements, three local individuals in St. Croix filed a class action civil suit against Spartan and Heavy Materials based on the high price of concrete in the Virgin Islands, citing the two agreements.

40. Furthermore, upon information and belief, the Antitrust Division of the U.S. Department of Justice is investigating Plaintiffs Douglas Gurlea, Thomas Brunt IV, and Shane Brunt in connection with these two agreements.

41. Had Plaintiffs been properly advised and informed by the Defendants as to the antitrust risks presented by the two agreements, Plaintiffs never would have entered into these agreements with Spartan.

42. Plaintiffs reasonably relied on Defendants' legal advice in their management of a tense and often unclear relationship with Spartan Concrete. Due to Defendants' erroneous and unsound advice – and George Dudley's obstinate refusal to properly research or consult others about this matter – Plaintiffs directed Heavy Materials to enter into the two agreements with Spartan, agreements which later caused the Plaintiffs personal, financial, and reputational harm.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

43. It is a central tenant of the American legal system that "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Virgin Islands Rules of Professional Conduct Rule 211.1.1 (2014).*

44. Due to George Dudley's and DTF's erroneous and deficient advice, including wrongly stating to Plaintiffs "the size of the operation is not big enough to cross the federal threshold" for antitrust wrongdoing," Plaintiffs have suffered severe damages, including legal fees, direct monetary damages, consequential damages, reputational damages, and emotional distress.

**B. George Dudley's & DTF's Representation of the Defendants.**

45. On information and belief, George Dudley has provided legal services and counsel directly to the Plaintiffs since 2005.

46. However, Thomas Brunt IV and Shane Brunt have a somewhat longer history of dealing with the Defendants.

47. The Defendants have represented the Brunt family (owners of the business commonly known as MSI located in the Virgin Islands) since the 1980s.

48. Thomas Brunt IV started to be employed at MSI sometime between 1993 – 1994.

49. Shane Brunt started to be employed at MSI sometime in the late 1990s.

50. During the time that Thomas and Shane Brunt were employed by MSI they met, on multiple occasions, with George Dudley and other lawyers from DNF to discuss legal issues related to the operations of MSI.

51. In this way, Thomas and Shane Brunt had relied upon the legal advice of Defendants for approximately a decade prior to receiving the wrong advice from them.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

52. Thomas and Shane Brunt always saw George Dudley and DNF as 'their' lawyers and it was natural when the Plaintiffs were contemplating entering a business deal – the purchase of concrete operations in St. Thomas – that George Dudley and DNF were chosen – again – as their legal counsel.

53. During the operations of Heavy Materials, George Dudley and DNF, were the 'lawyers for the business' and handled everything from employment issues to dealing with government entities.

54. As set forth, *supra,* the representation by Dudley and DNF was both for Heavy Materials, LLC and Tommy Brunt, Shane Brunt, and Doug Gurlea in their individual capacities.

55. For example, in a phone conversation on January 23, 2013, Dudley, Tommy Brunt, Shane Brunt, and Doug Gurlea were discussing potential antitrust and anticompetitive issues related to the Plaintiffs and Heavy Materials dealings with Spartan Concrete, Warren Mosler, and Roger Bressi. George Dudley gave the (wrong) advice:

   a. "Because we're not dealing with, the size of the operation is not big enough to cross the federal threshold, I don't think we need to worry about the Attorney General's office, but that doesn't prevent the AG for political reason attempting to do something about this…"

   b. George Dudley gave the following advice related to the division of territories – St. Croix for Spartan and St. Thomas/St. John for Heavy Materials: "You know, this is a conversation I could have with Hunter Logan. Say, Hunt, look you know, we have two crabs here. Let's take each crab out of and put them in separate barrels since we can't have these two crabs co-existing. And Spartan can stay in the concrete delivery business and you know, Heavy Materials will

stay in the aggregate and concrete manufacturing business.  And we'll work out an arrangement where we're going to get out of the business the same way we were out of it before."

c.  George Dudley asserted that he could come to an agreement with Hunter Logan – Spartan's then counsel and now law partner of George Dudley – to split up territories between the two entities engaged in the same business.

d.   "Doug says to Mosler the document that Hunter and I will craft would on its face be legally sufficient.  What you guys decide to do beyond that, you know, obviously I would counsel you not to do anything stupid, but, you know, that's all – the binding document is going to be the documents which the parties sign but we're going to draft, *I can assure you that it's not going to violate the law*."

56.  On October 1, 2013, Tommy Brunt and Doug Gurlea were talking with George Dudley about the Plaintiffs and Heavy Materials 'leaving' the St. Croix market at the same time that Spartan would 'leave' the St. Thomas market – there was concern about antitrust and/or anticompetitive activity – George Dudley gave the following advice:

a.  "Well, yeah, I mean, if, if, if our normal price is $165 and we're, you know, breaking even, that's, you know, so we keep it there and gradually bring it up to something higher is fine, but the minute [Spartan Concrete in St. Thomas] shut[s] down, we don't go from their $160 to our $210.  Then you're right.  All hells gonna break loose.  Or from a PR perspective."

b.  "Right, we're gonna have an assignment of the [Spartan Concrete St. Thomas] lease, we're gonna have the 5-year material supply agreement, that's gonna

include a non-competition clause and an option to purchase for a price to be determined. By the way, I'll, I'll let you know, the, such a [unclear] is not binding on anybody but, you know, it allows [unclear] of the fact. If you don't have some kind of a mechanism for determining what the price should be, you know…"

57. Heavy Materials was a closely held business. It was owned by three people – the three plaintiffs in this case. There was sufficient privity between Heavy Materials and the Plaintiffs, Thomas Brunt, Shane Brunt, and Douglas Gurlea such that Defendants could reasonably foresee that his legal advice to Heavy Materials would necessarily affect the Plaintiffs as individuals including criminal liabilities and, even, potential imprisonment.

58. Defendants knew that the individual plaintiffs were relying upon them to provide accurate information and professional legal opinions, and that they would justifiably rely upon the Defendants' legal advice and representation(s).

59. Defendants – knowing that the plaintiffs were relying upon them as lawyers – as knowledgeable, trusted professionals, and for some as trusted family advisors – misinformed plaintiffs with regard to a number of significant points of law.

60. But for the Defendants' improper rendering of legal advice, which fell far below the standard of care for similar attorneys, the individual plaintiffs would not have been damaged.

61. These damages suffered by Plaintiffs as a result of Defendants' misconduct has included, without limitation, extensive criminal investigation and possible prosecution, multiple civil lawsuits in which they have been or may be called as witnesses or defendants, extensive legal fees to defend themselves from the foregoing or other future liabilities.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

62. Defendants had given advice to the individual plaintiffs on past occasions, in addition to their company.

63. Defendants represented the individual Plaintiffs for many years prior to their misconduct as alleged herein,and continued to do so when they gave improper advice to the individual Plaintiffs.

64. Plaintiffs entered into attorney-client relationships with Defendants and rely upon the legal advice rendered by Defendants, to Plaintiffs' detriment and resulting in catastrophic damages.

65. Defendants rendered legal advice to Plaintiffs not only with regard to their business, but also inter alia regarding their personal liabilities, the personal conduct, and their potential for criminal charges in antitrust matters.

66. As a result of the Defendants' legal advice rendered to Plaintiffs, they have not only been damaged extensively financially, and to their reputations and personally, but they also may face future civil and criminal charges including, without limitation sanctions and / or imprisonment.

### C. Concrete in the Virgin Islands & Defendants' History of Advising Plaintiffs

67. The plaintiffs, collectively, have decades of experience in the concrete industry in the U.S. Virgin Islands.

68. Concrete has four components: Aggregates, water, cement, and air. Cement – also referred to as "portland cement" – is a powder which is combined with water to make a paste, which is then mixed with aggregates (water, sand, and gravel or crushed stone). There are several aspects to the concrete industry, including batching (mixing of concrete, which can be done

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

at batching plants or mobile units), manufacturing and delivering of ready-made concrete (trucks with revolving drums), manufacture and supply of cement-based materials, and mining and supply of aggregates, which are often sourced from quarries.

69. Historically, St. Thomas has had one quarry and St. Croix has had two quarries.

70. For several years prior to 2005, one of the main players in the concrete business in the U.S. Virgin Islands was Devcon International, a firm based in Deerfield Beach, Florida. From 2015 to the present, the main player in the concrete business in the Virgin Islands has been US Concrete.[2] In the years in between, from 2005 to 2015, the concrete industry in the Virgin Islands has been more complicated.

71. In 2005, Heavy Materials was founded when all three plaintiffs, Doug Gurlea, and Shane and Tommy Brunt, purchased the concrete operations of Devcon. Plaintiff Doug Gurlea had been the Regional Manager for Devcon. Having worked for years under Devcon's founder, he observed that the management team was not making necessary capital improvements in the company. Plaintiffs Thomas and Shane Brunt joined with Gurlea, bringing funding and resources, including securing a substantial bank loan. In the newly formed company, Heavy Materials, Gurlea was the operational partner and Thomas and Shane Brunt became involved in the management of the company, attending weekly operations meetings.

72. Shortly after the plaintiffs founded Heavy Materials by purchasing of Devcon's assets, the owner of St. Thomas Concrete, another local company, approached the plaintiffs, requesting that they buy him out as he wanted to retire to the continental United States. This was unsolicited by the plaintiffs.

---

[2] As of August 2021, Vulcan Materials Company has acquired US Concrete. Upon information and belief, George Dudley and DNF represented both U.S. Concrete and Vulcan Materials in the U.S. Virgin Islands.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

73. The plaintiffs purchased these assets of St. Thomas Concrete. From the plaintiffs' perspective as business operators with experience in the Virgin Islands, the result of these two purchases was that Heavy Materials was substantially similar to the original company Devcon had built in the Virgin Islands.

74. This was done with the advice and counsel of the Defendants.

75. In late 2008, in the wake of the global financial crisis, Plaintiffs had several discussions with each other and outside sources regarding the economic downturn and significantly decreased demand for concrete in the Virgin Islands. It was at this time that Plaintiffs began to discuss various responsive business measures, including withdrawing from St. Croix.

76. After Plaintiffs had formed Heavy Materials by purchasing assets formerly owned and run by Devcon, they encountered Rodger Bressi ("Bressi") and multi-millionaire Warren Mosler ("Mosler"), individuals who were running and funding, respectively, a concrete operation in St. Croix known as Spartan Concrete Co., ("Spartan"). As discussed further herein, it became clear to Plaintiffs that Spartan was involved in predatory pricing of concrete, for the purpose of attempting to drive Heavy Materials out of business.

77. In 2013, Heavy Materials, at the advice of George Dudley, entered into agreements with Spartan Concrete, discussed in detail herein.

78. After these agreements, the concrete and construction industries in the Virgin Islands were still suffering from economic downturn. In 2015, the plaintiffs decided to sell the membership interests of Heavy Materials to U.S. Concrete, a large American company based in Euless, Texas.

79. Spartan Concrete was also purchased by U.S. Concrete in October of 2015. In an October 28, 2015, press release on the transactions, U.S. Concrete stated "We plan to create a more

Case: 3:22-cv-00024-RAM-RM    Document #: 1    Filed: 04/09/22    Page 17 of 41
Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

efficient operating dynamic in the U.S. Virgin Islands and the Caribbean by combining the efforts of these two separately owned businesses into one cohesive unit."

80. As of August 26, 2021, U.S. Concrete has been purchased by Vulcan Materials Company, a publicly traded corporation headquartered in Birmingham, Alabama. A member of the S&P 500 Index, Vulcan Materials Corporation is a supplier of aggregates and a producer of aggregates-based construction materials, including asphalt and ready-mixed concrete.

### D. George Dudley's Advice to the Plaintiffs

81. In or about 2008, the Plaintiffs, as owners and operators of Heavy Materials, encountered Rodger Bressi, who at that time was starting up a concrete business in St. Croix.

82. Spartan was offering concrete in St. Croix for extremely low prices. Heavy Materials was not surprised about having a competitor; it had a long-standing practice of selling aggregates to businesses that were its competitors in one or more aspects of the industry. However, the pricing that Spartan was offering in St. Croix was so extreme that the Plaintiffs thought that Bressi did not properly understand his costs of doing business.

83. Heavy Materials owned two quarries, one on St. Thomas and one on St. Croix. Heavy Materials sought to sell aggregates to Spartan, attempting to convince Bressi that Heavy Materials' aggregates were of better quality and cheaper than what Spartan might be buying on St. Croix or importing.

84. Plaintiffs did not know how Spartan was funded. They eventually found out that Spartan was financed by multi-millionaire hedge fund founder Warren Mosler ("Mosler").

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

85. Plaintiffs were initially relieved to learn of Mosler and his connection to Spartan because they felt they might make more progress with Mosler than they had with Bressi on engaging Spartan as a customer for aggregates.

86. What Plaintiffs did not realize at that time was that Mosler's likely intent was to lose money in order to force Heavy Materials to sell its St. Croix operations or simply exit the concrete business in St. Croix. Spartan eventually expanded its operations to St. Thomas, including its practice of undercutting Heavy Materials on price, not simply competitive pricing, but predatory pricing. Spartan's predatory pricing scheme, which took place from approximately 2008 to 2012, came to light later in litigation in which Spartan sued Argos USVI, a bulk cement vendor.

87. The litigation, filed by Spartan in federal court in the District of the Virgin Islands in January of 2015, had a bench trial in July 2017 which revealed "that Spartan started the price war with the goal of obtaining a monopoly on St. Thomas and/or St. Croix." *Spartan Concrete Products, LLC v. Argos USVI, Corp.,* 929 F.3d 107, 110 (3d Cir. 2019).

88. Argos USVI sold bulk cement to both Heavy Materials and Spartan. In its lawsuit against Argos, Spartan alleged that Argos violated § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), by giving Heavy Materials, but not Spartan, a 10 percent volume discount. (Heavy Materials' purchases accounted for more than three-fourths of Argos's bulk sales.) The lawsuit revealed that Spartan lost nearly $4 million in the three years it competed on St. Thomas; by contrast, the 10% discount it did not receive from Argos effectively amounted to 1.4% of Spartan's total costs during that period. *Spartan Concrete Products, LLC v. Argos USVI, Corp.,* 929 F.3d 107, 110 (3d Cir. 2019).

89. After the bench trial in July of 2017, Judge Curtis Gomez of the U.S. District Court for the District of the Virgin Islands entered judgement for Argos, finding that Spartan failed to prove an antitrust injury. A unanimous three-judge panel of the United States Court of Appeals for the Third Circuit affirmed. *Spartan Concrete Products, LLC v. Argos USVI, Corp.,* 929 F.3d 107, 113 (3d Cir. 2019).

90. During the approximate time period of 2011 - 2012 at the height of the predatory pricing practices by Spartan on St. Croix as well as St. Thomas, the Plaintiffs approached George Dudley and his firm, their long-time counsel, for advice as they contemplated Heavy Materials' business plans going forward.

91. Defendants were professionally obligated to render accurate, diligent advice in keeping with the standard of care of their profession.

92. Defendants, however, gave Plaintiffs improper advice, contrary to the law, contrary to their professional obligations, and, in doing so, greatly harmed Plaintiffs financially and otherwise.

93. Upon information and belief, George Dudley is not trained to be an antitrust lawyer or to render advice in this highly technical field.

94. George Dudley's biography at DNF's website does not list antitrust as one of his practice areas, nor does his biography at the Virgin Islands Bar Association's online database, nor does his LinkedIn profile.

95. Nevertheless, he held himself out to the Plaintiffs as knowledgeable and competent to advise them on antitrust law while they were dealing with a complex predatory pricing scheme from a competitor during economically challenging times for the local concrete industry.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

96. On or about December 10, 2011, Plaintiffs exchanged emails with Michael Quinn, an attorney in DNF, with a background in criminal law. This was mainly to discuss events surrounding an individual, Jason Masino, who had given Heavy Materials' pricing data to Spartan. Quinn stated in the email to plaintiffs "I sat down with George [Dudley] and Stefan Herpel to discuss the criminal angle as well as the antitrust issues, as I have some background in that subject as well."

97. This statement, along with many others made by Defendants, gave Plaintiffs the reasonable impression that DNF had attorneys experienced in antitrust that would be called upon to give counsel, or assist George Dudley with legal counsel, on antitrust issues.

98. In addition to emails, Plaintiffs had several phone calls with George Dudley related to the Heavy Materials/Spartan matters, including potential antitrust issues - most of these phone calls were recorded.

99. On July 12, 2012, Doug Gurlea, expressed to Thomas and Shane Brunt that Heavy Materials should make every effort to see what kind of deal could be made with Spartan."   Gurlea's mindset, realistically contemplating the economic situation at the time, was that Heavy Materials would be able to survive in a poor economy if it had more influence over its pricing, days of delivery, and other aspects of the concrete business, and would have a chance to pull through the long-lasting downturn in the economy without the problematic interference of Spartan. While Plaintiffs' focus was on survival of their company, including their employees' jobs, they acted responsibly by reaching out for legal counsel -and relying upon that advice – before making any decisions that might be an illegal restraint of trade. Their goal was not just preserving what they had built, but also a desire to conduct their business operations in compliance with the law.

100. For this, they trusted – and were damaged by – the Defendants.

101. On or about the 3rd of December of 2012, Plaintiffs had a call with George Dudley regarding a possible purchase of Spartan by Heavy Materials, including persuading a bank to finance the deal.

102. Dudley stated that he could provide a legal opinion to a bank that a deal in which Heavy Materials purchased Spartan would not violate antitrust laws. Upon information and belief, Dudley did this without adequate research, understanding this area of the law or consultation with an expert.

103. On how to persuade the bank Dudley advised the Plaintiffs:

Dudley:     [Suggesting what to say to a bank] You have our [Heavy Materials] numbers for the last two years. If we change one factor, our price per yard of concrete by Y dollars, all of those numbers would go from red to black and the reason why they are where they are is because of the guy across the street. And if we can eliminate that guy across the street, then overnight, we can return-

T.Brunt:     It would happen over time.

Dudley:     If we buy the company and we take up the price drastically, that's all quite legal. If we buy the company, and we keep them in place, and they raise price under our direction, that's [unintelligible] restraint of trade.

104. Plaintiffs had been considering other strategies to preserve their business, as they were on the verge of announcing layoffs, in an economic climate in the Virgin Islands in which unemployment was still high in the aftermath of the Great Recession. On January 9, 2013,

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

Heavy Materials sent Warren Mosler a Letter of Intent to buy Spartan for between $3.5 and $5 million. In earlier conversation, Mosler had made offers to the plaintiffs to buy Heavy Materials.

105. On January 23rd, 2013, Plaintiffs spoke with Dudley again, about a potential deal in which Heavy Materials would substantially exit the delivery business and remaining in the batching (mixing of concrete) business, and Spartan would do the reverse, substantially discontinue batching and remain in delivery.

106. On January 23rd, 2013, Doug Gurlea asked, following up on the previous call, about a potential deal with Spartan to divide batching and deliveries. Gurlea said to Dudley "As first glance you said you didn't necessarily have a problem with it, you didn't think we'd have any issues with it on collusion... So anyways that's kind of where we left things." Dudley confirmed his advice that there would be no negative antitrust consequences, responding "Right."

107. Dudley then, reinforced his approval and antitrust advice, stating that doing so would be "perfectly appropriate" because Heavy Materials and Spartan would just be "reverting back to when the business operated before acquiring the concrete retail business. . . . The question is going to be to make it truly a non-collusive situation, you know you sell him or lease him the trucks, either way is OK…"

108. Dudley continued his ill-conceived legal advice: "Spartan can stay in the concrete delivery business and you know, Heavy Materials will stay in the aggregate and concrete manufacturing business.  And we'll work out an arrangement where we're going to get out of the business the same way we were out of it before."

109. On that January 23rd call, Tommy Brunt asked Dudley "So we can't ask him [Spartan] for a material supply agreement that guarantees he's only buying it from us?"  Dudley responded "No, we cannot because then we're getting into restraint of trade problems."

110. Also on that January 23rd call, Dudley also specifically advised Plaintiffs that "the size of the operation is not big enough to cross the federal threshold" for antitrust wrongdoing.

111. These statements by George Dudley, on several telephone calls and meetings in December 2012 and January 2013, which were a mostly **inaccurate** portrayal of anti-trust law, were nevertheless made with the conviction and confidence of an attorney who is knowledgeable of antitrust law.

112. Plaintiffs understandably relied on Dudley's and DNF's legal counsel.

113. The Plaintiffs had further discussions with Spartan and ongoing conversations with George Dudley and DNF throughout 2013.

114. In September of 2013, Heavy Materials made the decision to stop selling ready-mix concrete in St. Croix.

115. On or about October 1, 2013, Plaintiffs Thomas Brunt IV and Douglas Gurlea had a telephone call with George Dudley (the "First October 1 Call") before Doug Gurlea and Thomas Brunt flew to St. Croix to meet with Warren Mosler and Michael Pede of Spartan Concrete, for the purpose of obtaining – and relying upon – Dudley's legal counsel about what types of deals or agreements they, the Plaintiffs, could make on behalf of Heavy Materials with the representatives for Spartan Concrete Co.

116. On this call, Thomas Brunt asked Dudley for his legal counsel on the idea of a non-compete proposal that Plaintiffs say to Spartan that Heavy Materials:

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

T. Brunt:      [We'd say that we] may want to focus on the St. Thomas market, move out of the St. Croix market. . . . . We would be willing to entertain a non-compete.  If you were willing to sign a supply agreement and we recognize that you may decide to and intimated to us that you are not interested in being in the St. Thomas market . . . that the Sookram lease is . . . a liability. . . . Is there a way for us to say . . . because of the economics at St. Croix . . . we believe it's in our better interest to focus on one market, our presence is in St. Thomas.

Dudley:        Well the question is when do you need the St. Thomas lease?"

Gurlea:        It's important to have it as a backup plan. . .  in case our plant goes down and we're in the middle of a pour.

Dudley:        "I just want to make sure you have a legitimate business – essential business decision position to do it and as defensible.

T. Brunt:      George, what specifically can't we say?  We can't say things like: we'll do this if you do that.  Right?  It's just that we're contemplated [sic] doing this.  We're looking at our business.  We're focusing.

Dudley:        All that is legitimate, you know rational business decision-making. So I would probably say any of that.

T.Brunt:       Are there any specific third rails that we can't go near?  Like a quid pro quo conversation.  We'll do this if you do that?"

Dudley:        If you're telling me we're gonna take over the St. Thomas lease and he leaves, you know, that's great. . . . Doing the same analysis in

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

> terms of economics, St. Thomas versus St. Croix, and realizing if
> we're right, that St. Thomas is bleeding money. And it's
> hemorrhaging that's gonna stop.

117. Thomas Brunt and Doug Gurlea went to St. Croix and spoke with Warren Mosler and Michael Pede of Spartan. They carefully managed the conversation based on the legal advice requested of – and provided by – George Dudley and DNF.

118. After the meeting with Spartan, they called George Dudley again, (the "Second October 1 Call.")

119. Plaintiffs informed Dudley "the ball is in our court." Dudley advised Plaintiffs on how to proceed. He suggests simultaneously signing the assignment for the lease for Spartan's operations in St. Thomas (assigning that lease to Heavy Materials) and then negotiating changes to that lease. Gurlea suggested to Dudley that Plaintiffs would "explain… that you would contact their counsel, that there is a good working relationship between the two of you, that they agreed to that. . . " Dudley then continued "I don't have a problem with the assignment."

120. With this statement, George Dudley was not only telling the Plaintiffs his opinion that the lease assignment did not violate the law, but further, that Plaintiffs should communicate to Spartan that they could inform their attorney that it was George Dudley's and DNF's opinion that the lease assignment did not violate the law, including federal antitrust laws.

121. Next on the call, Plaintiffs and Dudley discussed the potential blowback from future price increases.

122. Dudley advised, "If our [Heavy Materials] normal price is $165 and we're . . . breaking even . . . we keep it there and gradually bring it up to something higher is fine, but the minute they

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

[Spartan] shut down, we don't go from their $160 to our $210. . . . All hells gonna break loose.  Or from a PR perspective."

123. The Plaintiffs and George Dudley then discussed how to proceed with amendments, with Dudley advising to make two separate contracts (what would become the St. Thomas Lease Assignment and the Supply Agreement):

> T.Brunt:     And we don't want to tell, we don't, again from a, I don't know George, you speak to this, from a collusion standpoint we don't want to tell them what they're prices should be to our customer or-

> Dudley:      **"No, no I mean, you're right, the biggest risk is the public relations, not a legal one.** . . ."

> Doug:        So at this point George, you want to go ahead . . . you'll work in conjunction with Spartan's counsel to start the work on this assignment and negotiation these changes that we want"?

> Dudley:      Right, we're gonna have an assignment of the Number 1 [No. 1 Concrete is the landlord of Spartan's St. Thomas property] lease, we're gonna have the 5-year material supply agreement, that's gonna include a non-competition clause and an option to purchase. . . ."

124. DNF, with Dudley at the lead,  proceeded to draft the two agreements – the St. Thomas Lease Assignment and the Supply Agreement.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

125. In an email of October 24, 2013, Warren Mosler of Spartan Concrete commented on the state of negotiations: "Don't see how we are giving anything. I get STX." He continued: "I get STX with good prices. STT is a loser for us, so no loss there."

126. On October 30th and 31st, 2013, there were email exchanges regarding the negotiations with Spartan on the terms of the Supply Agreement. Plaintiff Doug Gurlea emailed Dudley, Mosler and Logan Hunt (Spartan's attorney and currently a partner at DNF LLP) to ask Dudley to call Mosler to discuss the exclusivity issue. George Dudley wrote that he required sign off from Mosler's attorney to do that. Dudley later stated in these emails that he spoke with Hunter Logan who "concurs with my view that reciprocal exclusivity constitutes an 'agreement in restraint of trade' which is illegal under both federal and local law."

127. In early November of 2013, Nov. 4-6 & 13th, there were more emails and phone calls between Plaintiffs and Dudley about how to proceed with Spartan without violating antitrust law. At one point during this time period, Dudley advised Plaintiffs about possibly agreeing to cover Spartan's rent for the balance of the term (presumably without Spartan using the plant), stating "an argument can be made that we have entered into an agreement in restraint of trade with Spartan."

128. On November 14th, Thomas Brunt wrote an email to George Dudley with a report on a conversation among himself, Shane Brunt and Douglas Gurlea. Thomas Brunt said to Dudley:

> There is a school of thought amongst us that says letting Spartan simply say they will not be renewing might be better for HM in the long run. By not having this agreement in place it strengthens our case that we made our decision to pull out of St Croix because of the St. Croix economy and not because we had some sort of

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

quid pro quo (which we do not). . . Ultimately we want to try and secure the

Sookram plant [the St. Thomas operations base for Spartan Concrete] to give us

capacity for the incredible amount of concrete we see coming for the STT and STJ

markets. . .”

129. It was clear that Thomas Brunt was seeking Dudley's legal advice on proceeding in this

manner so as to avoid violating antitrust laws.

130. Shockingly, Defendants, thus, knew that potential federal antitrust violations were a major

concern for Plaintiffs. Nevertheless, they rendered mistaken legal advice.

131. On December 4, 2013, George Dudley stated to the Plaintiffs “On withdrawing from St.

Croix, I don't have a problem advising the union and the employees as soon as all of the

agreements are in place with Spartan.” This statement, by Dudley, further reinforces his legal

approval of the agreements between Spartan and Heavy Materials.

132. On December 13, the St. Thomas Lease Agreement was signed by Plaintiff Doug Gurlea, as

President of Heavy Materials LLC and Warren Mosler, as Manager of Spartan Concrete

Products.

133. The Supply Agreement was dated two days later on December 15th, and signed by Warren

Mosler on December 16th and Douglas Gurlea on December 18th.

134. On December 18th, 2013, immediately after the Supply Agreement was signed, George

Dudley drafted a notice to the Commissioner of Labor for the U.S. Virgin Islands, keeping

with his plans, and explaining that Heavy Materials would be pulling out of certain operations

in St. Croix and stated:

This decision is the result of the dramatic decline in the demand for concrete that

has occurred on the island of St. Croix since the closing of the HOVENSA refinery.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

This decline in the demand for concrete has resulted in operating losses for the concrete division of HM's operation on St. Croix and these steps are being taken in an attempt to arrest those losses.

The letters Dudley drafted to Heavy Materials' employees and its union used similar language.

135. The problems inherent in George Dudley's advice became apparent less than one year after the agreements were signed, agreements in which George Dudley and DNF advised the Plaintiffs over several months, drafted, and represented the Plaintiffs in their negotiation and execution.

136. On September 10, 2014, Plaintiff Douglas Gurlea received a formal two-page single spaced letter from The Economic Development Authority of the U.S. Virgin Islands, (the "USVIEDA"). Percy Clouden, the CEO of the Economic Development Authority wrote:

We have become very concerned with the events over the last year which have increased the price of concrete products at an alarming rate. Of great concern is the fact that the only two concrete companies in the Virgin Islands (Spartan Concrete Products, LLC and Heavy Materials LLC) simultaneously ceased certain business activities in their opposite districts. This resulted in the creation of monopolistic environments. Consequently this has led to complaints about collusion in the industry within the Territory of the U.S. Virgin Island, which our antitrust laws prohibit as an unreasonable restrain [sic] on trade or commerce.

The Economic Development Commission, Attorney General, Department of Licensing, and Consumer, Internal Revenue Bureau, Housing Finance Authority

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

and the Office of the Governor have formed a task force to investigate this matter.

Specifically, we seek to ensure that the Virgin Islands Code Title 11, Chapter 29

the 'Virgin Islands Antimonopoly Law,' Title 12A, Chapter 2 Consumer Protection

Law of 1973, the Sherman Act or any other local or federal antitrust laws have not

been broken thereby violating the terms of your EDC Certificate.


At the end of the letter, Clouden cc'd two of his colleagues at the USVIEDA and individuals

in the leadership of the five government offices named in the letter as part of the investigation

into Heavy Materials.

137. Plaintiff Douglas Gurlea promptly turned this letter over to Defendants and sought out their

advice. Plaintiffs were understandably very concerned, both for their business, Heavy

Materials, but also for the ramifications for them as individuals.

138. This letter clearly flagged the results of Defendants' erroneous and incompetent legal advice

to the Plaintiffs.

139. In response, there were paths that Dudley could have taken with his clients, the Plaintiffs, to

mitigate the repercussions from this antitrust investigation. Instead, George Dudley's

obstinate reaction was to write a response letter with emphatic conclusory statements – which

were clearly misguided as to the federal antitrust laws.

140. George Dudley's response letter to Percy Clouden, dated October 6, 2014, insulted CEO

Clouden and attempted to shift focus to the economic conditions of the Virgin Islands:

Before concluding this letter I must make an observation: I was dismayed by the
accusatory tone of your letter.  It presumes, incorrectly, that Heavy Materials has
not been subject to and affected by the economic constraints and fiscal stresses that
have been visited upon every business in the Territory as a result of the 'Great
Recession.'   And that the steps taken by Heavy Materials in response to the
economic conditions it faced in the Territory was not the result of responsible

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

decision making by the owners of the company but rather the product of a conspiracy with its principal competitor.

I can assure you that no conspiracy existed.  I cannot speak for Spartan Concrete Products, LLC, however, decisions made by the owners of Heavy Materials and the steps taken by the company were made after meetings with its principal creditor, FirstBank Virgin Islands, its accountant, Larry E. Kemp, CPA, and with me as its business counsel.   The steps taken were not only legal, they were fully rational in light of the business conditions existing at the time the decisions were made; conditions, I might note, that in many respects continue to this day: the refinery on St. Croix remains closed; residential and commercial construction, and the general level of economic activity throughout the Territory remain well below the levels that existed prior to the "Great Recession.".

141. While George Dudley also provided information requested by the USVIEDA and expressed willingness to meet for discussion, the overall message conveyed in the letter was not an insightful analysis that Heavy Materials did not, in fact, violate local and federal antitrust laws, but rather, an emphatic statement that economic conditions justified his clients' actions. If George Dudley was experienced in antitrust law, researched antitrust law, or called upon the relevant knowledge of any of his colleagues at Dudley Newman Feuerzeig, LLP he would have been aware that challenging economic conditions do not excuse violations of the Sherman Act or the Virgin Islands Anti-Monopoly Law.

142. In addition, George Dudley concealed the fact that he had advised the Plaintiffs and drafted agreements related to the complaints underlying the letter from USVIEDA.

143. Dudley had specific negotiations and conversations with Hunter Logan – then counsel to Spartan, now law partner of Dudley – on how to draft separate agreements in order to avoid antitrust scrutiny.  Dudley even remarked that "the size of the operation is not big enough to cross the federal threshold" for antitrust investigations.

144. In the suit brought by Spartan in early 2015 against Argos USVI, Plaintiffs were subpoenaed to testify. Doug Gurlea did testify.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

145. The Defendants eventually represented the individual Plaintiffs in the sale of the membership interests of Heavy Materials to U.S. Concrete in October 2016.

146. Plaintiffs have been extensively harmed by Defendants' misconduct. The Plaintiffs have spent years involved in legal actions (potentially both criminal and civil), their lives have been upturned by the public allegations and investigations, their personal lives have suffered, and their reputations have been damaged as a result.

### Count 1 - Professional/Legal Malpractice as to All Defendants

147. Plaintiffs repeat and reallege the facts and allegations contained in the foregoing paragraphs as if fully set forth herein.

148. To establish a legal malpractice claim under Virgin Islands law, the plaintiff must prove "1) the attorney-client relationship giving rise to a duty; 2) breach of that duty; 3) the causal connection between the negligent conduct and the resulting injury, and 4) actual loss or damage." *Baptiste v. Rohn* 2016 U.S. Dist. LEXIS 41097, 2-3 (March 29, 2016) (Citing Simon v. Joseph, 59 V.I. 611, 621-22 (V.I. 2013) and *Moorehead v. Miller*, 102 F.R.D. 834, 838, 21 V.I. 79 (D.V.I. 1984)).

149. As to the first element, George Dudley and the plaintiffs very clearly had an attorney-client relationship giving rise to a duty. George Dudley, along with other attorneys at DNF, counseled Plaintiffs, represented Plaintiffs and invoiced Plaintiffs for their work. George Dudley did not just advise Heavy Materials, but also knew or should have known that his legal advice in the area of antitrust law would impact the Plaintiffs as individuals, not only as owners of a corporation.

150. When an attorney represents a closely-held company, the attorney-client relationship may extend to the individual shareholders of the company.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

151. Here, the Defendants rendered legal advice to Plaintiffs individually, in addition to Heavy Materials.

152. As recently as 2019, George Dudley and his firm Dudley Newman Feuerzig sent Plaintiffs an invoice for their services, addressed to the plaintiffs as individuals, "Doug Gurlea, Tom Brunt IV & Shane Brunt" with their individual email addresses. The expectation of payment from individuals further indicates that Dudley had privity with the plaintiffs in their individual capacity.

153. Upon information and belief, Defendants remain in their role as counsel to Heavy Materials' successor in interest insofar as they retain institutional history and are familiar with the remaining open issues.

154. The ramifications stemming from Defendants' misconduct was not discovered until years after Plaintiffs had sold their interest in Heavy Materials.

155. As to the second element, George Dudley and DNF clearly breached their duty to the plaintiffs. In violation of Rule 211.1.1 of the Virgin Island Rules of Professional Responsibility, they failed to provide competent representation to Plaintiffs as individuals or Heavy Materials as a business. They held themselves out to plaintiffs as knowledgeable about antitrust law, but failed to see the obvious risks in Heavy Materials signing two agreements with its main competitor in the geographic region.

156. Upon information and belief, had Dudley been knowledgeable or researched antitrust law or the Virgin Islands Anti-Monopoly law, he would have known that economic downturn is not an affirmative defense. He also would have known that the magnitude of the businesses of Heavy Materials or Spartan is also not an affirmative defense.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

Instead, Defendants gave the plaintiffs false peace of mind when he stated on January 23, 2013: "The size of the operation is not big enough to cross the federal threshold" for antitrust wrongdoing. Simply put, George Dudley (and DNF) breached his duty by failing to research the law.

157. As to the third element, there was a direct causal connection between Defendants' negligent conduct – providing substandard and erroneous legal advice - and the resulting injury to the Plaintiffs, which is still ongoing. Plaintiffs most certainly would not have entered into the St. Thomas Lease Assignment or the Supply Agreement with Spartan if George Dudley or anyone at DNF had properly advised them of the risks.

158. To the contrary, Dudley gave his approval.

159. As to the fourth element, Plaintiffs have suffered substantial actual damages. First, they have continued to pay legal fees to defend themselves and have been forced to provide testimony in ongoing legal proceedings, they have suffered serious damage to their reputations in the tight-knit community of the Virgin Islands, and they are currently facing a potential indictment by the Antitrust Division of the Department of Justice, in which prosecutors may seek both civil and criminal penalties.

160. As a result of George Dudley's and DNF's incompetent counsel, Plaintiffs have been damaged in an amount and character to be determined at trial.

## **Count 2 - Breach of Contract as to Law Firm and Attorney George H.T. Dudley**

161. Plaintiffs repeat and reallege the facts and allegations contained in the foregoing paragraphs as if fully set forth herein.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

162. The Defendants had an agreement to provide proper, adequate, and competent legal representation of the Plaintiffs.

163. This agreement created a duty on the part of the Defendants to provide competent and correct legal advice to the Plaintiffs, as well as a duty to properly research the law.

164. Inherent in contracts for legal services is the duty to have "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Virgin Islands Rules of Professional Conduct Rule 211.1.1 (2014).*

165. The Defendants breached their duty and caused actual harm and damages to the Plaintiffs, both economic and non-economic.

166. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount and character to be determined at trial.

## Count 3 - Breach of Fiduciary Duty Against All Defendants

167. Plaintiffs repeat and reallege the facts and allegations contained in the foregoing paragraphs as if fully set forth herein.

168. Pursuant to the parties' contractual agreement, Defendants George Dudley and his firm, Dudley Newman Feuerzeig, LLP (formerly Dudley, Topper, and Feuerzeig, LLP) represented Heavy Materials. The attorney-client relationship also extended to the Plaintiffs as individuals.

169. However, even if the attorney client relationship did not extend to the Plaintiffs as individuals, Dudley and DNF also had a fiduciary duty to the Plaintiffs. Heavy Materials was a closely-held corporation with three owners – all three plaintiffs in this action.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

170. The extension of Dudley and DNF's fiduciary duty to the Plaintiffs as individuals is particularly strong in that the advice they were seeking was in the area of federal and local antitrust law. Had Dudley been competent to practice antitrust law, he would have known that it carries both civil and criminal penalties, for companies and individuals. Public policy dictates that providing legal counsel to a corporation on an area of law that has strong penalties for individual owners and employees of that corporation necessarily creates a fiduciary duty to those individuals.

171. At the very least, Dudley could have made clear that his advice was to Heavy Materials as a corporate entity and advised the Plaintiffs to retain separate counsel to assess their personal risks. Plaintiffs made the reasonable decision trust in George Dudley, and Dudley could reasonably foresee that Plaintiffs relied on his legal advice to manage both professional and personal legal risks.

172. To establish a claim for breach of a fiduciary duty: (1) there must be a fiduciary relationship, (2) the fiduciary must have breached its duty imposed by such relationship, (3) the plaintiff must have been harmed, and (4) the fiduciary's breach must be a proximate cause of the plaintiff's harm. *Watts v. Blake-Coleman*, Civil No. 2011-61 at 11 (D.V.I. Mar. 29, 2012)(Citing the Restatement (Second) of Torts § 874 (1979)); *Ebner v. Petrohan,* 2018 WL 3996888, at *7 (V.I. Super. Ct. Aug. 14, 2018) (Superior Court performing *Banks* analysis for elements of breach of fiduciary duty).

173. . "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Id.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

174. George Dudley and Dudley Newman Feuerzeig, LLP had a fiduciary relation to the Plaintiffs due to the subject matter of his advice. Antitrust law has implications for business conduct, and naturally extends to individuals in that it provides for both civil damages and criminal prosecution of the people involved in business decision making.

175. By rendering (poor) advice on antitrust law and blessing the relevant transactions, George Dudley had a fiduciary responsibility not only to Heavy Materials as a company, but also to the three leaders that made decisions for the company – the Plaintiffs in this case.

176. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount and character to be determined at trial.

**<u>Count 4 - Breach of Covenant of Good Faith and Fair Dealing</u>**

177. Plaintiffs repeat and reallege the facts and allegations contained in the foregoing paragraphs as if fully set forth herein.

178. The Plaintiffs and the Defendants had an agreement for the Defendants to represent the Plaintiffs as legal advisers and lawyers.

179. During the representation of the Plaintiffs, the Defendants were intentionally fraudulent and deceitful in their conduct – namely purporting to have expertise in antitrust matters when no such expertise was held by the Defendants.

180. The fraudulent and deceitful conduct occurred during the time of the legal representation of the Plaintiffs by the Defendants.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

181. The fraudulent and deceitful conduct of the Defendants was inconsistent with the reasonable expectations of the Plaintiffs – the Plaintiffs expected to be given competent legal advice and representation.

182. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount and character to be determined at trial.

## Count 5 - Negligence

183. Plaintiffs repeat and reallege the facts and allegations contained in the foregoing paragraphs as if fully set forth herein.

184. The Defendants made numerous false and fraudulent misrepresentations during the course and scope of their representation of the Plaintiffs.

185. The Defendants specifically represented that the Defendants were capable and possessed antitrust expertise in order to properly advise Plaintiffs.

186. The representations by Defendants were false and material – the advice given by Defendants violated the basic principles of antitrust and anticompetitive law.  In addition, the improper advice triggered an ongoing investigation by the U.S. Department of Justice which has cost the Plaintiffs almost $1Million in legal fees and can result in incarceration.

187. Defendants' conduct was below the requisite standard of care for someone in the industry, practice, and geographic locale.

188. Defendants failed to take reasonable care in rendering their advice to Plaintiffs including, without limitation, preforming legal research or speaking to more experienced attorneys.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

189. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount and character to be determined at trial.

## Count 6 - Infliction of Emotional Distress

190. Plaintiffs repeat and reallege the facts and allegations contained in the foregoing paragraphs as if fully set forth herein.

191. The actions of the Defendants were reckless – the utter lack of knowledge regarding antitrust issues and the advice contrary to the established law related to antitrust and anticompetitive issues and the drafting of legal contracts which violate the antitrust laws which have caused an investigation by the U.S. Department of Justice.

192. The actions of Defendants went beyond mere negligence or neglect, the conduct was extreme and outrageous and was violative of the ethical responsibilities that govern the practice of law as well as exceeding all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society.

193. The Plaintiffs suffered and continue to suffer emotional distress related to the actions of the Defendants and the resulting fall out in both their personal and professional lives.

194. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount and character to be determined at trial.

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully demand judgment be entered in favor of Plaintiffs

and against Defendants, and that Plaintiffs be awarded the following:

      a.  Compensatory damages;

      b.  Incidental damages;

      c.  Consequential damages;

      d.  Lost past and future income;

      e.  Punitive damages;

      f.  Statutory interest;

      g.  Attorney's fees and costs;

      h.  Any other relief deemed appropriate.

Respectfully submitted,
**Michael L. Sheesley, P.C.**

Dated: April 9, 2022

_____
Michael Sheesley
V.I. Bar No. 1010
P.O. Box 307728
St. Thomas, VI 00803
(412)972-0412
michael@sheesley-law.com

Gurlea, et. al. v. Dudley, et. al.
3:22-cv-24
Verified Complaint

## VERIFICATION

Doug Gurlea, pursuant to *V.I.R.Civ.P. 84* and *28 U.S.C. 1746,* being first duly sworn, states that he has read the foregoing Complaint; that he is familiar with the contents thereof; and he declares under the penalty of perjury that the facts stated therein are true and correct.

DATED: 4/8/2022 _____

_____
Doug Gurlea