## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **DOUGLAS GURLEA, THOMAS BRUNT IV,** )<br>**and SHANE BRUNT,** )<br> )<br> **Plaintiffs,** )<br> )<br> **v.** )<br> )<br>**GEORGE H.T. DUDLEY and DUDLEY** )<br>**NEWMAN FEUERZEIG LLP,** )<br> )<br> **Defendants.** ) | **Case No. 3:22-cv-0024** |

**ATTORNEYS:**

**MICHAEL L. SHEESLEY, ESQ.,**
MLSPC
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR PLAINTIFFS DOUGLAS GURLEA, THOMAS BRUNT IV, AND SHANE BRUNT*

**OMID ZAREH, ESQ.,**
**TRACEY KEIJ-DENTON, ESQ.,**
WEINBERG ZAREH MALKIN PRICE, LLP
NEW YORK, NEW YORK
    *FOR PLAINTIFFS DOUGLAS GURLEA, THOMAS BRUNT IV, AND SHANE BRUNT*

**J. DARYL DODSON, ESQ.,**
MOORE, DODSON AND RUSSEL
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR DEFENDANTS GEORGE H.T. DUDLEY AND DUDLEY NEWMAN FEUERZEIG LLP*

**JOHN P. MORGENSTERN, ESQ.,**
**GAVIN FUNG, ESQ.,**
O'HAGAN MEYER
PHILADELPHIA, PENNSYLVANIA
    *FOR DEFENDANTS GEORGE H.T. DUDLEY AND DUDLEY NEWMAN FEUERZEIG LLP*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

    **THIS MATTER** comes before the Court, *sua sponte*, on the Amended Complaint of Plaintiffs Douglas Gurlea, Thomas Brunt IV, and Shane Brunt ("the Plaintiffs"). (ECF No. 25.)

For the reasons set forth herein, this matter will be dismissed without prejudice for lack of subject-matter jurisdiction.

## I.    FACTUAL BACKGROUND

Plaintiffs Douglas Gurlea, Thomas Brunt, and Shane Brunt are individual former owners of Heavy Materials, LLC ("Heavy Materials"), a concrete company in the U.S. Virgin Islands. *See id.* at 1. The Defendants, George Dudley ("Dudley") and his law firm Dudley Newman Feuerzeig LLP ("the firm") (collectively "the Defendants"), represented the Plaintiffs and Heavy Materials, LLC from the time of the concrete company's founding in 2005 through 2015, when the Plaintiffs sold the company to U.S. Concrete. *See id.* at 4. According to the Verified Complaint, while the defendant George Dudley was the attorney for Heavy Materials, he advised the company and the Plaintiffs on two agreements that Heavy Materials entered into with Spartan Concrete in 2013. *Id.* at 7. The Plaintiffs allege that during the negotiations of those two agreements, "George Dudley—explicitly and repeatedly—advised the Plaintiffs that these agreements did not violate antitrust law despite the fact that Dudley was not an expert in antitrust law, did not purport to practice antitrust law, and upon information and belief did not adequately research antitrust law or consult antitrust experts." *Id.* at 8. The Plaintiffs claim that due to Dudley's failure to become adequately informed on antitrust law or bring in an antitrust law expert, the Plaintiffs were not made aware of the "significant local and federal antitrust issues which [have now] caused Plaintiffs catastrophic harm," including an extensive criminal investigation and possible prosecution, multiple civil lawsuits in which they have been or may be called as witnesses or Defendants, and extensive legal fees to defend themselves from the foregoing or other future liabilities. (ECF No. 25 at 8, 14.)

Because of these alleged harms, the Plaintiffs filed a Verified Complaint against the Defendants on April 9, 2022. (ECF No. 1.) The Plaintiffs subsequently filed an Amended Complaint on July 15, 2022. (ECF No. 25.) The Amended Complaint asserts that the Defendants' alleged misconduct constituted legal malpractice. *Id.* at 38. Additionally, the Plaintiffs claim that, in the alternative, Dudley's conduct resulted in a breach of contract, and

the Defendants' collective conduct constituted: (1) a breach of fiduciary duty; (2) a breach of the covenant of good faith and fair dealing, and (3) negligence. *Id.* at 40-44.

Although the Plaintiffs' causes of action all derive from Virgin Islands law, the Plaintiffs maintain that this Court has general federal question jurisdiction over this case. *Id.* at 2. Specifically, the Plaintiffs allege that:

> This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. [§] 1331 because the causes of action arise under the laws of the United States generally referred to as The Sherman Antitrust Act, The Clayton Act, and the Federal Trade Commission Act. The federal antitrust issues at the heart of Plaintiffs' case are disputed, substantial and can be considered by a federal forum "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).

*Id.* The Defendants did not challenge whether the Court has subject-matter jurisdiction over this case. Accordingly, the Court raised the issue *sua sponte*.

On March 6, 2023, the Court issued an Order noting its concerns about the potential lack of subject-matter jurisdiction in this case. (ECF No. 48.) The March 6th Order also directed the parties to brief whether the Court had the authority to exercise general federal question jurisdiction in this matter. *Id.* The Plaintiffs filed their supplemental memorandum on March 17, 2023. (ECF No. 49.) In the supplemental brief, Plaintiffs contend that their claims meet the requirements set out in both *Grable* and *Gunn* because in order to resolve the malpractice claim, the Court will need to "necessarily determine, *inter alia* whether the calculated structuring of these agreements posed a risk of violating federal antitrust laws" and whether "Defendants advice, conduct, and legal research (or lack thereof), presented an impermissible risk to Plaintiffs that the two agreements would run afoul of federal antitrust statutes prohibiting contracts 'in restraint of trade or commerce.'" *Id.* at 4. According to the Plaintiffs, similar federal antitrust analyses are necessary to resolve their breach of contract claim, as well as the remaining counts for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and negligence. *See id.* at 5.

Additionally, the Plaintiffs assert that the federal legal issues are actually in dispute because the "parties dispute the interpretation and requirements of federal antitrust laws and regulations." *Id.* Furthermore, the Plaintiffs believe that the federal law questions are

substantial because they are necessary to resolve this case and will potentially impact numerous "future regulatory and judicial actions with respect to corporate and competitive behavior." *Id.* They also assert that exercising federal question jurisdiction would not disturb the balance of state and federal court responsibilities given that federal antitrust law is the exclusive jurisdiction of federal courts and because federal courts often decide similar state law claims. *See id.* at 3, 6.

The Defendants filed their response on March 27, 2023, indicating they "take no position on whether this Court has subject-matter jurisdiction over Plaintiffs' claims." (ECF No. 50.) With the matter fully briefed, the issue of the Court's subject-matter jurisdiction is now properly before the Court.

## II.     LEGAL STANDARD

### A.  Subject-Matter Jurisdiction

Federal courts are "courts of limited jurisdiction,"[1] and therefore, may not hear a claim unless specifically authorized by Congress.[2] *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 376 (2012) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)); *Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010).[3] This requirement is referred to as "subject-matter jurisdiction."[4] Because subject-matter jurisdiction is a constitutional prerequisite for a federal court to hear a case, the district judge has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a

---

[1] As noted by the Third Circuit in *Pichardo v. Virgin Islands Com'r of Labor*, although the District Court of the Virgin Islands is an article IV court as opposed to article III, this Court still retains the same subject-matter jurisdiction as any other federal district court in the civil context. *See generally* 613, F.3d 87 (2010) (discussing this Court's transition from a court of general jurisdiction to one of limited jurisdiction in civil cases).

[2] *See also* Article III Sec. 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority. . .").

[3] While there is also a constitutional "arising under" standard that must be satisfied to establish subject-matter jurisdiction, *see Mayor v. Cooper*, 73 U.S. 247, 251-52 (1867), that aspect of the federal jurisdiction requirement is not at issue in this case, and therefore, the Court will only focus on Article III's statutory requirement.

[4] "'Subject matter jurisdiction defines the court's authority to hear a given type of case.'" *Carlsbad Tech, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)); *see N.L.R.B. v. New Vista Nursing and Rehabilitation*, 719 F.3d 203, 211 (3d Cir. 2013).

challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citations omitted); *United States v. Cotton*, 535 U.S. 625, 630 (2000) ("Because subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived."); *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180, 199 (1921).[5] Accordingly, Federal Rule of Civil Procedure 12(h)(3) mandates a court to, *sua sponte*, dismiss a complaint in its entirety as soon as the court discovers that it lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 514 (citing 16 Moore § 106.66[1], pp. 106–88 to 106–89).

Given that Congress must provide the federal courts with authority to hear a case, "a plaintiff may invoke the jurisdiction of a federal court only pursuant to a statutory grant of authority to adjudicate the asserted claim." *Clinton County Com'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1021 (3d Cir. 1997) (citing *Kokkonen*, 511 U.S. at 377 and *In re Morrissey*, 717 F.2d 100, 102 (3d Cir. 1983)). While a specific federal statute may entitle a party to federal jurisdiction,[6] the primary way original subject-matter jurisdiction arises is through the diversity and general federal question jurisdiction statutes. *See* 28 U.S.C. § 1332(a) (diversity); 28 U.S.C. § 1331 (federal question). Since the Plaintiffs have not identified a special statute conferring jurisdiction, nor have they offered a basis for diversity jurisdiction, the Court will focus its inquiry on federal question jurisdiction. *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [the federal court's] limited jurisdiction") (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11 (1799); *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) ("[P]laintiff must prove the court has subject matter jurisdiction.") (citation omitted).[7]

---

[5] The Court in *Smith* acknowledged "[n]o objection [was] made to the federal jurisdiction, either original or appellate, by the parties to this suit, but [nevertheless determined] that question will be first examined." 255 U.S. at 199.

[6] *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983) (acknowledging Congress' power to enact statutes conferring jurisdiction to the federal courts beyond the diversity and federal question jurisdiction statutes); *Osborn v. Bank of the United States*, 9 Wheat. 738 (1824) (upholding the constitutionality of a statute granting the Bank of the United States the right to sue in federal court on causes of action based upon state law).

[7] The Plaintiffs' Verified Complaint and supplemental brief effectively concede that the Court cannot exercise diversity jurisdiction over this case. Section 1332(a) requires "'complete diversity,' meaning that 'no plaintiff can be a citizen of the same state as any of the defendants.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (quoting *Grand Union Supermarkets of the Virgin Islands Inc. v. H.E. Lockhart Management, Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)). Here, Plaintiffs Thomas Brunt IV and Shane Brunt are citizens of the U.S.

### i.      Federal Question Jurisdiction (28 U.S.C. § 1331)

Pursuant to 28 U.S.C. § 1331, Congress has provided the federal courts with general federal question jurisdiction "over all civil actions *arising under* the Constitution, Laws, or treaties of the United States." (emphasis added). In other words, federal courts maintain jurisdiction over all civil cases "arising" from federal law. Federal question jurisdiction may arise in one of two ways. *See Goldman v. Citigroup Global Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016). "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citing *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action.")). "In those cases, federal courts unquestionably have federal subject-matter jurisdiction." *Gardiner v. St. Croix Dist. Governing Bd. Of Directors*, 859 F. Supp. 2d 728, 732 (D.V.I. 2012) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 (1986)).

While the "creation" method is the primary means of establishing general federal question jurisdiction,[8] the Supreme Court has acknowledged that there is a "'special and small category' of cases in which arising under jurisdiction still lies" even though the plaintiff's cause of action is based on state law. *Gunn*, 568 U.S. at 257 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)); *see Goldman*, 834 F.3d at 249. For general federal question jurisdiction to exist over a state law claim, the claim must contain a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The Supreme Court has stressed that federal question jurisdiction requires "more than a federal element 'to open the arising under' door," and therefore, it is a rare case that a state law claim satisfies all four of the *Grable* factors. *Empire Healthchoice Assur., Inc.*, 547 U.S. at 701 (quoting *Grable*, 545 U.S. at 313).

---

Virgin Islands. (ECF No. 25 at 2.) Defendant George Dudley is also a citizen of the U.S. Virgin Islands. *Id.* Therefore, there is not complete diversity among the Plaintiffs and the Defendants. Consequently, the Court may not exercise diversity jurisdiction over this case.

[8] "The vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc.*, 478 U.S. at 808.

### ii.        The Grable factors

To satisfy the first requirement of the *Grable* test, the plaintiff must show that the federal issue is "necessarily raised." *Gunn*, 568 U.S. at 258.  In other words, the success of the state law claim must be dependent on the "validity," "effect," "construction[,] or application" of the underlying federal law. *Smith*, 255 U.S. at 199; *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912); *see Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983) (explaining that a federal issue is necessarily raised "where the vindication of a right under state law necessarily turn[s] on some construction of federal law"). Thus, the "necessarily raised" requirement is traditionally met when the underlying federal law issue is an element of the plaintiff's cause of action. *See Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014).

The second factor requires the federal law issue to be "actually disputed" by the parties. *Gunn*, 568 U.S. at 258. All a party must do to satisfy the actual dispute requirement is demonstrate that the federal issue "necessarily raised" is central and dispositive in the case as opposed to being merely "incidental," "possible," or "conjectural." *Gully v. First National Bank*, 299 U.S. 109, 112-13 (1936); *MHA, LLC v. UnitedHealth Group, Inc.*, Civ. No. 13-6130, 2014 WL 223176, at *7 (D.N.J. 2014); *see MHA LLC v. HealthFirst, Inc.*, 629 Fed. App'x 409, 414 (3d Cir. 2015); *Dixon v Coburg Dairy, Inc.*, 369 F.3d 811, 817 (4th Cir. 2004).

Regarding the third factor—the substantiality requirement—"federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 314. Therefore, the fact that a "federal issue is significant to the particular parties in the immediate suit" is insufficient as "that will *always* be true when the state claim 'necessarily raises' a disputed federal issue. . .." The disputed issue must significantly impact the "federal system as a whole." *Gunn*, 568 U.S. at 260. Over time, the Supreme Court has established three factors to consider when weighing whether a federal law issue is truly substantial. *See Inspired Dev. Gr., LLC v. Inspired Prod. Gr., LLC*, 938 F.3d 1355, 1364 (Fed. Cir. 2019). First, for a substantial federal issue to be present, the issue should usually be one of pure law that will have a dispositive effect on the case as opposed to being "fact-bound and

situation-specific." *Empire Healthchoice Assur., Inc.*, 547, U.S. at 700-01; *see Goldman*, 834 F.3d at 257; *Stout v. Novartis Pharms. Copr*, Civ. Nos. 08–856, 07–2774, 09–0095, 09–916, 07–1657, 07–655, 2009 WL 4576130, at *3 (D.N.J. Nov. 30, 2009) ("The Supreme Court has been quite clear that the dispute must be over legal interpretation of federal law, not facts or state law.") (citing *Grable*, 545 U.S. at 313). Second, the issue is more likely to be substantial if the court's resolution of the issue will '"be controlling in numerous other cases."' *Gunn*, 568 U.S. at 262 (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700). Lastly, the federal issue is more likely to be substantial where "the Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable*, 545 U.S. at 315; *see Smith*, 255 U.S. at 180; *City of Greensburg v. Wisneski*, 75 F. Supp. 3d 688, 697 (W.D. Pa. 2015).

However, even if the state action satisfies the first three *Grable* factors, "the exercise of federal jurisdiction is [still] subject to a possible veto." *Grable*, 545 U.S. at 313. For the state claim to ultimately satisfy the fourth factor, and overcome the final hurdle, federal jurisdiction over the case must be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 13-14.

### III. DISCUSSION

As with all subject-matter jurisdiction analyses, the Court begins the inquiry by examining the well-pleaded complaint. The Plaintiffs argue that they may proceed in federal court based on federal question jurisdiction because "federal antitrust law issues are at the heart" of their state law claims. (ECF No. 25 at 2.) In other words, the Plaintiffs contend that although their state law claims do not arise from a federally created cause of action in the traditional sense, their claims fall into the "special and small category" of state claims that nevertheless arise under federal law because they believe their state claims involve fundamental issues of federal antitrust law that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

Before the Court addresses the specific *Grable* factors in this case, the Court notes that federal courts have long held that state law claims do not "arise under" federal law merely because the underlying subject matter involved is federal in nature. *Merrell Dow*, 478 U.S. at 813 ("The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); *Grable*, 545 U.S. at 313 (noting that more than the "mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door"). To conclude otherwise would sweep countless state law claims into federal court and ultimately undermine "state authority in an area in which states have traditionally been dominant." *Singh v. Duane Morris LLP*, 538 F.3d 334, 340 (5th Cir. 2008). Thus, the simple fact that the Plaintiffs' claims potentially involve the resolution of non-specific federal antitrust law issues is certainly not enough, on its own, to open the door to federal jurisdiction. *See Empire Healthchoice Assur., Inc.*, 547 U.S. at 699 (emphasizing that federal jurisdiction over state causes of action is supposed to be for a "special and small" set of cases). However, Plaintiffs offer little more than federal antitrust issues are embedded in their state law claim to support their case for federal jurisdiction. Thus, as the Court will explain in detail below, the Plaintiffs have failed to demonstrate that their claims satisfy all four of the *Grable* factors necessary for establishing that their state claims arise under federal law.

As for the first and second *Grable* factors, the Court finds that a federal law issue is not "necessarily raised" or "disputed" in this case. To satisfy the initial two requirements of the *Grable* test, the Plaintiffs' claims must be *dependent* on the construction or interpretation of the federal law, and that construction must be *dispositive* to the outcome of the case. *Smith*, 255 U.S. at 199; *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 9; *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700. None of the Plaintiffs' claims are necessarily dependent on the interpretation of federal antitrust law. The Plaintiffs claim that Defendants' alleged inaccurate legal advice regarding the Heavy Materials and Spartan Concrete agreements caused "significant local and federal antitrust issues" for the Plaintiffs. Thus, the Plaintiffs plainly assert that the Defendants' advice regarding state antitrust law is also a possible basis for their claims. However, as the Supreme Court in *Christianson* noted, a district court should

not exercise federal question jurisdiction over a state law claim when the complaint provides an independent state law theory upon which the plaintiff can obtain the relief he seeks. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 810 (1988) ("[A] claim supported by alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each."); *Manning*, 772 F.3d at 164 ("But even if Plaintiffs' claims were partially predicated on federal law, federal law would still not be *necessarily raised* . . . [w]here 'plaintiffs state law [] claims allege both federal and state predicate acts[.]'" [N]o federal question is necessarily raised because a Plaintiff could 'prevail upon their New Jersey RICO claims or any of their other state-law claims without any need to prove or establish a violation of federal law.'") (quoting *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*, Civ. No. 06-4197, 2007 WL 1456204, at *2–3 (D.N.J. May 15, 2007)) (emphasis added). Therefore, because the Plaintiffs may potentially succeed on their state law claims by relying exclusively on Virgin Islands antitrust law, the federal antitrust issues are not necessarily raised or certain to be in dispute. *See Gardiner*, 859 F. Supp. 2d at 736-37 (collecting cases); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 153 (4th Cir. 1994). Accordingly, the Plaintiffs' claims do not satisfy the first two *Grable* factors.

This defect alone prevents the Plaintiffs from proceeding in federal court. However, even if the Plaintiffs were to eliminate any reference to the Virgin Islands antitrust laws in their Complaint, their claims would still fail to meet the remaining two requirements of the *Grable* test.[9]

Regarding *Grable*'s third factor, there is no substantial federal interest raised. First, the federal issues do not involve a pure question of law. *See Medici v. Lifespan Corp.*, 384 F.

---

[9] The Court takes a moment to clarify that simply removing the references to the Virgin Islands antitrust laws in the Complaint would not resolve the above-mentioned problem. The Plaintiffs would need to reformulate their claims in such a way that the claims could only succeed based on an underlying federal law theory. *See Franchise Tax Bd.*, 463 U.S. at 13; *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) ("'[A] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue.'") (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)) (en banc) (emphasis in the original); *Pinney v. Nokia Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) ("If a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law.").

Supp. 3d 218, 222 (D.R.I. 2019) ("The *Grable* test does not give rise to federal question jurisdiction where, although the case raises a disputed question of federal law, that federal question is not a 'pure issue of law,' but is instead 'fact-bound and situation-specific.'") (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700-01). According to the Plaintiffs, they would be asking the Court to determine whether "the calculated structuring of [the Spartan-Heavy Materials] agreements posed a risk of violating federal antitrust laws." (ECF No. 49-1 at 5.) By all indications, such a determination would be an exceptionally involved fact-based inquiry and, thus, would likely be of limited value to the federal system. *See Empire Healthchoice Assur.*, Inc., 547 U.S. at 700-01; *Goldman*, 834 F.3d at 257.

Additionally, despite the Plaintiffs' contentions to the contrary, the resolution of the federal antitrust issues here would almost certainly not be controlling in numerous other federal cases. For Plaintiffs to succeed on their claims, the antitrust laws at issue would necessarily have to be fairly well established in order to demonstrate that the Defendants' advice constituted malpractice, breach of fiduciary duty, negligence, breach of the duty of good faith and fair dealing, or incompetence sufficient to establish a breach of contract.[10] As such, the Court is doubtful that the claims will involve novel questions of federal law that would govern many future cases. *See RX.com, Inc. v. O'Quinn*, 766 F. Supp. 2d 790, 795-96 (S.D. Tex. 2011) (determining that federal antitrust law issues necessary to establish plaintiff's malpractice claim may have been important to them, "but there was no broader issue of federal law implicated"); *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) (finding breach of contract claim regarding alleged violation of Department of Housing and Urban Development regulations did not give rise to federal question jurisdiction because the claim did not turn on a new interpretation of a federal statute or regulation which will govern a large number of cases).

---

[10] *See Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985) (explaining that to prove the breach element in a legal malpractice claim, plaintiffs must show the attorney's conduct fell below the "'ordinary skill and capacity'" of a practitioner in the profession) (citation omitted) *accord Reynolds v. Rohn*, 70 V.I. 887, 894-95 (2019) (adopting same legal malpractice standard as every other jurisdiction in the country); *see also In re Belmar*, 319 B.R. 748, 753-54 (Bankr. D.D.C. 2004) (applying the same standard of care for each cause of action in a similar case where the plaintiff alleged legal malpractice, breach of contract, and breach of fiduciary duty.)

There are also other defects with Plaintiffs' argument that a decision on the federal law issues, in this case, would govern in many other cases as well. As the Supreme Court highlighted in *Gunn*, the "backward-looking nature of a legal malpractice claim" necessarily means that the "[federal law] question is posed in a merely hypothetical sense." *Gunn*, 568 U.S. at 261. Thus, no matter how the territorial court resolves the antitrust case contained within the malpractice case, it will not alter the validity or invalidity of the Spartan-Heavy Materials agreements, and therefore, will have no direct impact on federal antitrust law. *See Gunn*, 568 U.S. at 261-62; *O'Quinn*, 766 F. Supp. 2d at 795-96 (applying the same logic as *Gunn* to a malpractice case where the underlying issue was federal law).[11] The same goes for the breach of contract, breach of fiduciary duty, breach of good faith and fair dealing, and negligence claims. Those claims are also premised on the same hypothetical: would Plaintiffs have avoided antitrust issues if the Defendants had provided them competent legal advice. Consequently, those claims run into the same case-within-a-case problems highlighted in *Gunn*. *See Gunn*, 568 U.S. at 261-62; *Inspired Dev. Gr., LLC*, 938 F.3d at 1366 (concluding that *Gunn*'s reasoning regarding the substantiality factor was not limited to malpractice cases, but rather, could be applied in any instance where the causation element of the state claim required a case-within-a-case analysis).

More importantly, permitting the territorial court to resolve questions of federal law involved in a state claim will not undermine the development of a uniform body of federal antitrust law given that "state courts can be expected to hew closely to the pertinent federal precedents." *Gunn*, 568 U.S. at 262. As the Seventh Circuit aptly noted, "there is nothing unusual about a court having to decide issues that arise under the law of other jurisdictions;

---

[11] Plaintiffs attempt to argue that their claims are not hypothetical and are therefore distinguishable from the malpractice claims in *Gunn* because the federal antitrust issues are the nucleus of the conflict. (ECF No. 49-1 at 7.) However, Plaintiffs misconstrue what the Court in *Gunn* meant when it stated the malpractice claims, in that case, were hypothetical. The Court meant that because malpractice generally requires that a party prove a case-within-a-case, the plaintiff must show that hypothetically, if the attorney has exercised the requisite level of care, the plaintiff would not have been harmed. *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 347–48 (3d Cir. 2020). Under Virgin Islands law, the case-within-a-case method is currently the standard to prove a malpractice claim. *See Baptiste v. Rohn*, Civ. No. 2013-0104, 2016 WL 1261072, at *3 (D.V.I. Mar. 2016). As such, a determination of the federal antitrust law issues will have no real-world effect on the validity of the agreements, and therefore, a determination on those issues is merely hypothetical.

otherwise there would be no field called 'conflict of laws' and no rule barring removal of a case from state to federal court on the basis of a federal defense." *Hays v. Cave*, 446 F.3d 712, 714 (7th Cir. 2006); *see Mikulski*, 501 F.3d at 560–61 (quoting *Zwickler v. Koota*, 389 U.S. 241, 245 (1967)) ("During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws."). Moreover, even if this case did implicate a novel federal antitrust question, a federal court attempting to resolve a similar non-hypothetical antitrust issue in the future would not be bound by the territorial court's case-within-a-case antitrust ruling. *See Gunn*, 568 U.S. at 262 (citing *Tafflin v. Levitt*, 493 U.S. 455, 465 (1990)) (explaining that federal courts retain "full authority and responsibility for the interpretation and application of federal [law]" and thus "would not be bound by state court interpretations of the federal [law]").[12] Thus, allowing the territorial court to resolve the federal antitrust issues poses no risk to the uniformity of federal antitrust law, especially in a fact-intensive case such as this one.

Finally, the Plaintiffs claims also fail to satisfy the fourth *Grable* factor. The fourth factor requires the Court to determine whether the federal court's exercise of jurisdiction over the state claims at issue would disturb the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Because federal courts are courts of limited jurisdiction and because *Grable* was intended to apply to only a small subset of cases, this analysis requires the Court to consider whether exercising jurisdiction over the claims would open the door to an "enormous shift of traditionally state cases into federal courts." *Id.* at 319.

In this case, Plaintiffs effectively seek to allow any state law claim to enter federal court as long the underlying issues implicate an area of federal law, particularly federal antitrust law, that is subject to the federal court's exclusive jurisdiction. (ECF No. 49.)[13]

---

[12] *See also Tafflin*, 493 U.S. at 465 (noting that state court interpretations of federal law will have a "negligible effect on the uniform interpretation and application of federal [] law" in the same way federal courts sitting in diversity have a negligible effect on the uniform interpretation of state law).

[13] Plaintiffs assert that "consistent with Supreme Court precedent that federal antitrust laws exclude state court jurisdiction of federal antitrust claims, this case 'sensibly belongs in federal court.'" (ECF No. 49-1 at 6) (citations omitted).

Plaintiffs hone in on the idea that because federal antitrust law is subject to the exclusive jurisdiction of the federal courts, Congress accordingly intended to provide a federal forum for any type of claim where federal antitrust law is an important issue. *See* ECF No. 49-1 at 6; *see also Nanavati v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96, 112 (3d Cir. 1988) (federal courts retain exclusive jurisdiction over federal antitrust claims) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379-86 (1985)).

However, the Supreme Court has clarified that federal courts should be weary of such proposals. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v.  Manning*, 578 U.S. 374, 390 (2016) ("when a statute mandates, rather than permits, federal jurisdiction—thus depriving state courts of all ability to adjudicate certain claims—our reluctance to endorse broad readings, if anything, grows stronger."); *Essar Steel Minn. LLC*, 843 F.3d at 334 ("Our reluctance [to grant federal question jurisdiction] is especially heightened in this case because 'the interpretation of a contract is ordinarily a matter of state law to which we defer.'") (quoting *DirectTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015)).[14] And rightly so. If the Court adopted Plaintiffs' theory, federal courts would be overwhelmed by a flood of state claims they had no significant interest in adjudicating simply because the claims involved one of a number of areas of federal law subject to the exclusive jurisdiction of the federal courts. *See Federal Jurisdiction as Exclusive vs. Concurrent With State Courts*: Rutter Group Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 2A-3 (providing a list of areas of federal law subject to the federal court's exclusive jurisdiction including: Title 11 Bankruptcy, patents, copyrights, antitrust, the Security and Exchange Act of 1934, Investment Company Act, ERISA breach of fiduciary duty claims, Federal Tort Claims Act, among others). Thus, because the Plaintiffs

---

[14] Moreover, federal courts around the country have found that it is of little significance, for the purposes of federal question jurisdiction over a state law claim, whether the underlying federal statute is subject to the exclusive jurisdiction of the federal courts. *See, e.g., O'Quinn*, 766 F. Supp. 2d at 795-96 (concluding no federal question in a malpractice case where underlying law was antitrust); *Gunn*, 568 U.S. at 261 (no federal question jurisdiction for malpractice claim involving underlying patent law issue despite federal courts possessing exclusive jurisdiction over patent law); *Inspired Dev. Gr., LLC*, 938 F.3d at 1370 (finding no federal question jurisdiction for the state law claims involving underlying patent law issue because "[m]any state law claims involve such embedded questions. "To hold that all questions of patent infringement are substantial questions of federal law for the purposes of federal patent jurisdiction would sweep a number of state-law claims into federal court."); *Byrne v. Wood, Herron & Evans, LLP*, 676 F.3d 1024, 1033 (Fed Cir. 2012) (O'Malley, J., dissenting) (collecting cases).

offer no other limiting principle, exercising federal question jurisdiction here would set the stage for a flood of traditionally state-based claims in federal court and "would do so without [any] discernible 'congressional intent to open the federal court to the mass of such state actions.'" *Gardiner*, 859 F. Supp. 2d at 740 (quoting *Sullivan v. Novartis Pharm. Corp.*, 602 F. Supp. 2d 527, 537 (D.N.J. 2009)). Additionally, state courts would lose a whole host of cases traditionally within their domain.

Even if the Court accepted Plaintiffs' argument at face value, and concluded that permitting federal jurisdiction here would only open the door to state claims involving underlying federal antitrust issues, as opposed to all claims involving federal law subject to the exclusive jurisdiction of the federal courts, such a precedent would still expand the federal courts' jurisdiction too far.[15] Accordingly, an exercise of federal question jurisdiction in this instance would undoubtedly "disturb [the] congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

In light of these considerations, the Court finds that none of the *Grable* factors have been met in this case. Therefore, there is no basis for federal question jurisdiction for any of the Plaintiffs' claims.

## IV.    CONCLUSION

After thorough review and consideration, the Court finds that it does not have authority to exercise subject-matter jurisdiction over this case. Plaintiffs fail to satisfy either test for federal question jurisdiction. The Plaintiffs' claims do not satisfy the traditional "arising under" test as they are all state law claims. The Plaintiffs' claims also fail the *Grable* test for federal question jurisdiction. Not only is it uncertain whether the Plaintiffs' claims will necessarily raise questions of federal law or are actually in dispute, but the case law

---

[15] *See Essar Steel Minn. LLC,* 843 F.3d at 334 (denying federal jurisdiction over a state claim where the underlying federal law was one of exclusive federal court jurisdiction, in part, because doing so would expand exclusive federal jurisdiction to every state claim where the underlying federal law was at issue); *Adventure Outdoors, Inc., v. Bloomberg*, 552 F.3d 1290, 1302-03 (11th Cir. 2008) (holding that there was no federal jurisdiction for the state claim because "by authorizing the exercise of federal jurisdiction here, we would open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law."); *Mikulski*, 501 F.3d at 573-574 (finding that extending federal question jurisdiction to a question involving a specific provision of the federal tax code would open the door too wide as it would likely set a precedent for analogous state law claims with underlying federal tax code questions at issue).

makes clear that state law claims such as these do not meet the substantiality requirement. Additionally, opening the door to such a broad swath of state-based claims would almost assuredly disrupt the balance between the state and federal courts. Given that the Plaintiffs offer no other basis for federal jurisdiction, the Court must dismiss the case without prejudice.[16] An accompanying order of even date will follow.

**Dated:** March 30, 2023                      */s/ Robert A. Molloy*
                                               **ROBERT A. MOLLOY**
                                               **Chief Judge**

---

[16] Since the Court does not reach the merits of the case, the case will be dismissed without prejudice. *See Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 243 (3d Cir. 2022).